IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. 3:22-220-JFA |
| | ) | |
| v. | ) | |
| | ) | |
| BERNARD KENTRELL BREELAND, JR. | ) | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO MOTION TO
DISMISS THE INDICTMENT**

Bernard Kentrell Breeland, Jr. was charged in an Indictment with being a felon in possession of a firearm.

Breeland has moved to dismiss the indictment. ECF No. 38. He argues the statute is unconstitutional under the Supreme Court's recent decision in *New York State Rifle & Pistol Assoc., Inc. v. Bruen*, 142 S.Ct. 2111 (2022). Breeland's claim regarding the § 922(g)(1) charge fails because the Second Amendment's protections do not extend to the possession of firearms by convicted felons. Even if the statute did regulate protected conduct, they would still be constitutional because it is consistent with the nation's historical tradition of firearm regulation. Breeland's motion to dismiss should be denied.

**I.  LEGAL BACKGROUND**

   **a.  Statutory Regulations on Firearm Possession**

Section 922(g)(1) makes it unlawful for any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to "ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(1).

The federal prohibition in § 922(g) has existed in some form since 1938, when Congress first limited gun access by convicted felons. *United States v. Laurent*, 861 F. Supp. 2d 71, 82 (E.D.N.Y. 2011); *see United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (noting the "first federal statute disqualifying felons from possessing firearms was not enacted until 1938"). The original federal prohibition reached only those under indictment for or convicted of crimes of violence. *Laurent*, 861 F. Supp. 2d at 82 (citing Federal Firearms Act of 1938, 75 Cong. Ch. 850, § 2(e), 52 Stat. 1250, 1251 (repealed)). In 1961, Congress expanded the prohibitions to include those convicted of all crimes. *Id.* at 83. Congress later passed the Gun Control Act of 1968, which added restrictions on those under felony indictment and maintained the prohibition related to convicted felons. *Id.* "In 1986, Congress again revised the statute to combine the provisions of § 922(g)(1) and (h)(1) that dealt with indictees into a single section, § 922(n)." *Id.* at 84. The statutory text has not substantively changed since then.

    **b. The Second Amendment**

The Second Amendment to the Constitution provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008), the Supreme Court recognized that the Second and Fourteenth Amendments protect the right of law-abiding, responsible citizens to possess a handgun in the home for lawful purposes, like self-defense. The Court thus held unconstitutional two District of Columbia laws that effectively banned handgun possession in the home and required all firearms within homes to be kept inoperable and so unavailable for self-defense. *Id.* at 628–34.

"Like most rights," however, *Heller* emphasized that "the right secured by the Second Amendment is not unlimited." *Id.* at 626. It is "not a right to keep and carry any weapon

whatsoever in any manner whatsoever and for whatever purpose." *Id.* *Heller* made clear that the opinion should not "be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 626–27; *see also McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 786 (2010). *Heller* described these regulations as "presumptively lawful" measures. 554 U.S. at 627 n.26.

In *Bruen*, the Court "made the constitutional standard endorsed in *Heller* more explicit." 142 S.Ct. at 2134. It elaborated on the test *Heller* and *McDonald* set forth to determine whether a government regulation infringes on the Second Amendment right to possess and carry guns for self-defense: "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2129–30. Only after the government makes that showing "may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* at 2130.

Applying that standard, the Court held unconstitutional a New York licensing law that allowed an applicant to obtain a license to carry a gun outside his home only upon proving "proper cause exists." *Id.* at 2123. First, the Court held the Second Amendment's plain text covered the conduct at issue. *Id.* at 2134–35. The petitioners were "ordinary, law-abiding, adult citizens" who sought to carry handguns publicly for self-defense. *Id.* at 2134. This, the Court concluded, fell within "the right to keep and bear arms." *Id.*

The Court then surveyed historical data from "medieval to early modern England" through "the late-19th and early-20th centuries" to determine whether the licensing law squared with

3

historical tradition. *Id.* at 2135–56. After a "long journey through the Anglo-American history of public carry, [the Court] conclude[d] that respondents ha[d] not met their burden to identify an American tradition justifying the State's proper-cause requirement." *Id.* at 2156. "Apart from a few late-19th-century outlier jurisdictions," the Court summarized, "American governments simply have not broadly prohibited the public carry of commonly used firearms for personal defense" or required a showing of special need for public carry. *Id.*

*Bruen* rejected the means-end scrutiny framework most courts had relied upon to assess the constitutionality of gun regulations. *Id.* at 2127. But it did not, as Breland claims, invalidate § 922(g)(1). Nor did it entirely abrogate the Fourth Circuit's post-*Heller* Second Amendment precedent. After *Heller*, the Fourth Circuit explained that the first question when addressing a Second Amendment claim "is whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee," a "historical inquiry seek[ing] to determine whether the conduct at issue was understood to be within the scope of the right at the time of ratification." *United States v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010), *abrogated on other grounds by Bruen*, 142 S.Ct. 2111 (quotation marks omitted). *Bruen* described such an inquiry as "broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history." 142 S.Ct. at 2127. It did not undermine the Fourth Circuit's earlier analysis of the historical tradition of firearms regulations. As explained below, a review of that history and of Fourth Circuit precedent compels the conclusion that § 922(g)(1) is constitutional.

## II. SECTIOS 922(g)(1) IS CONSTITUTIONAL.

Breeland argues § 922(g)(1) is facially unconstitutional because its prohibitions are not "rooted in our country's history." ECF No. 38 at 4. He faces a heavy burden: "A facial challenge

4

to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). Section 922(g)(1) proscribes conduct outside the scope of the Second Amendment, and both is sufficiently analogous to historical regulations to be deemed "longstanding." Section 922(g)(1) is constitutional, and Breeland's motion to dismiss should be denied.

**A. Breeland's motion to dismiss the § 922(g)(1) charges should be denied because the Second Amendment does not extend to the possession of firearms by convicted felons.**

Breeland's facial challenge to the constitutionality of § 922(g)(1) also fails. First, Breeland cannot show the Second Amendment right to keep and bear arms protects the prohibited conduct: possessing a firearm as a convicted felon. Assuming he could, § 922(g)(1) would still be constitutional because the statute is consistent with the nation's historical tradition of disarming persons considered a risk to society. Breeland's motion to dismiss should be denied.

As noted above, *Heller* defined the right to bear arms as belonging to "law-abiding, responsible citizens." 554 U.S. at 635. Consistent with that definition, the Court cautioned that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *Id*. at 626. The Court described such prohibitions as "presumptively lawful" and falling within "exceptions" to the protected right to bear arms. *Id*. at 627 n.26, 635. In *McDonald*, a plurality of the Court repeated its "assurances" that *Heller* "did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons.'" 561 U.S. at 786 (quoting *Heller*, 554 U.S. at 626).

*Bruen* reinforces the conclusion that the Second Amendment does not extend to possession of firearms by convicted felons. *See* 142 S.Ct. at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring) (reiterating that "longstanding prohibitions on the possession of firearms by felons"

5

are constitutional). *Bruen* repeatedly described the Second Amendment as limited to "law-abiding" citizens. 142 S.Ct. at 2122, 2131, 2133, 2134, 2138, 2150, 2156. Consistent with that principle, *Bruen* approved "'shall-issue' licensing regimes that "require applicants to undergo a background check or pass a firearms safety course."[1] *Id*. at 2139 n.9; *see id*. at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring) ("[S]hall-issue licensing regimes are constitutionally permissible[.]"). In doing so, the Court had no need to analyze the history of shall-issue licensing regimes. Such regimes generally pass constitutional muster because they "are designed to ensure only that those bearing arms . . . are, in fact 'law-abiding, responsible citizens.'" *See id*. at 2139 n.9. This reasoning underscores that § 922(g)(1)—which aims to ensure that "those bearing arms" are "law-abiding, responsible citizens"—accords with the Second Amendment. *See id*.

As several courts of appeals have recognized, offenses serious enough to satisfy § 922(g)(1)—"crime[s] punishable by imprisonment for a term exceeding one year"—necessarily exclude the perpetrator from the class of law-abiding citizens protected by the Second Amendment. *See, e.g.*, *United States v. Rozier*, 598 F.3d 768, 771 (11th Cir. 2010); *United States v. Scroggins*, 599 F.3d 433, 451 (5th Cir. 2010) (reaffirming the Fifth Circuit's pre-*Heller* jurisprudence holding "that criminal prohibitions on felons (violent or nonviolent) possessing firearms did not violate" the Second Amendment). The Second Amendment permits Congress to disarm individuals based on their status as convicted felons. Section 922(g)(1) does not burden a constitutional right, and it is facially constitutional.[2]

---

[1] A "shall issue" regime is one in which "authorities must issue concealed-carry licenses whenever applicants satisfy certain threshold requirements." *Bruen*, 142 S.Ct. at 2123. By contrast, a "may issue" regime vests "authorities [with] discretion to deny concealed-carry licenses even when the applicant satisfies the statutory criteria." *Id*. at 2124.

[2] A regulation *Heller* recognized as "presumptively lawful," like the felon-in-possession ban, "could not violate the Second Amendment unless, as applied, it proscribed conduct falling within

Even if the Supreme Court had not already defined the Second Amendment in a way that excludes the right of convicted felons to possess firearms, Breeland's facial challenge still fails because § 922(g)(1) fits comfortably within the nation's longstanding tradition of disarming unvirtuous or dangerous citizens.[3] As the Fourth Circuit has recognized, "[p]laced in the wrong hands, firearms present a grave threat to public safety, and for this reason, the Anglo-American right to bear arms has always recognized and accommodated limitations for persons perceived to be dangerous." *United States v. Carter*, 669 F.3d 411, 415 (4th Cir. 2012), *abrogated on other grounds by Bruen*, 142 S.Ct. 2111. Indeed, "historical evidence support[s] the notion that government could disarm individuals who are not law-abiding members of the political community," such as convicted felons. *See United States v. Carpio-Leon*, 701 F.3d 974, 980 (4th Cir. 2012).[4]

---

the category of *law-abiding responsible* citizens using arms in defense of hearth and home." *United States v. Pruess*, 703 F.3d 242, 245 (4th Cir. 2012) (citing *Heller*, 544 U.S. at 635).

Breeland has not argued § 922(g)(1) is unconstitutional as applied to him, and any such claim would be meritless. Breeland has been convicted of Racketeering Conspiracy in 2013. *See* 3:12-513, ECF No. 1138. There is no credible argument that Breeland is within the category of "law-abiding responsible citizens" for whom the Second Amendment protects the right to bear arms.

[3] Breeland's only argument in support of his claim that the Constitution gives convicted felons the right to be armed is that § 922(g) "is not deeply rooted in this country's history." *See* ECF No. 38 at 4. But it does not matter that the federal felon-in-possession law is "of mid-20th century vintage." *See Nat'l Rifle Ass'n of Am., Inc. v. Bur. of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 196 (5th Cir. 2012), *abrogated on other grounds by Bruen*, 142 S.Ct. 2111. *Heller*'s point in endorsing felon-in-possession laws was not that they had existed in their modern form since the founding but that they were *analogous enough* to historical regulations to be deemed "longstanding." *See* 544 U.S. at 626–27.

[4] Shortly after *Heller*, the Fourth Circuit noted in dictum, "it appears to us that the historical data is not conclusive on the question of whether the founding era understanding was that the Second Amendment did not apply to felons." *Chester*, 628 F.3d at 680. As demonstrated below, and as the court later acknowledged in *Carter* and *Carpio-Leon*, the historical evidence in fact establishes that dangerous persons have always been subject to limitations and prohibitions on their right to possess firearms.

For centuries, the gun rights of certain groups have been categorically limited to promote public safety. *Heller* identified the right protected by the 1689 English Bill of Rights as "the predecessor of our Second Amendment." 554 U.S. at 593. That document provided "That the Subjects which are Protestants, may have Arms for their Defence suitable to their Conditions, and as allowed by Law." *Id.* (citing 1 W. & M., ch. 2, § 7, in 3 Eng. Stat. at Large 441). Both before and after its adoption, the English government retained the power to disarm individuals it viewed as dangerous. *See Carpio-Leon*, 701 F.3d at 980.

Thomas M. Cooley's 1868 treatise, which *Heller* described as "massively popular," 554 U.S. at 616, later explained that some classes of people were "almost universally excluded" from exercising certain civic rights, including "the idiot, the lunatic, and the felon, on obvious grounds." Thomas M. Cooley, *A Treatise on the Constitutional Limitations Which Rest Upon the Legislative Power of the States of the American Union* 29 (1st ed. 1868).[5] The Second Amendment incorporates "a common-law tradition that permits restrictions directed at citizens who are not law-abiding and responsible" and "'does not preclude laws disarming the unvirtuous (i.e. criminals).'" *United States v. Bena*, 664 F.3d 1180, 1183–84 (8th Cir. 2011) (quoting Don B. Kates, Jr., *The Second Amendment: A Dialogue*, Law & Contemp. Probs., Winter 1986 at 146 (1986)); *see also United States v. Rene E.*, 583 F.3d 8, 15–16 (1st Cir. 2009) ("Perhaps the most accurate way to describe the dominant understanding of the right to bear arms in the Founding era is as . . . limited to those members of the polity who were deemed capable of exercising it in a virtuous manner." (quoting in parenthetical Saul Cornell, *"Don't Know Much About History": The Current Crisis in Second Amendment Scholarship*, 29 N. Ky. L. Rev. 657, 679 (2002))).

---

[5] https://heinonline.org/HOL/Page?handle=hein.beal/tcl1868&id=1&collection=beal (accessed July 25, 2022).

As the Fourth Circuit has already recognized, "'[M]ost scholars of the Second Amendment agree that the right to bear arms was tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm "unvirtuous citizens."'" *Carpio-Leon*, 701 F.3d at 979–80 (quoting *United States v. Yancey*, 621 F.3d 681, 684–85 (7th Cir. 2010) (per curiam); *United States v. Vongxay*, 594 F.3d 1111, 1118 (9th Cir. 2010) (collecting scholarly sources). The court explained that "felons 'were excluded from the right to arms' because they were deemed unvirtuous." *Carpio-Leon*, 701 F.3d at 980 (quoting Glenn Harlan Reynolds, *A Critical Guide to the Second Amendment*, 62 Tenn. L. Rev. 461, 480 (1995)).

Historical records support this conclusion. "*Heller* identified as a 'highly influential' 'precursor' to the Second Amendment the Address and Reasons of Dissent of the Minority of the Convention of the State of Pennsylvania to Their Constituents." *Skoien*, 614 F.3d at 640 (quoting 554 U.S. at 604). That report recognized that the government could disarm potentially dangerous or irresponsible people, stating that "citizens have a personal right to bear arms 'unless for *crimes committed, or real danger of public injury*.'" *See id.* (emphasis added) (quoting 2 Bernard Schwartz, *The Bill of Rights: A Documentary History* 662, 665 (1971)). Similarly, Samuel Adams offered an amendment at the Massachusetts convention to ratify the Constitution, recommending "that the said Constitution be never construed to authorize Congress . . . to prevent the people of the United States, *who are peaceable citizens*, from keeping their own arms." Schwartz, *The Bill of Rights* 674–75, 681 (emphasis added) .[6] In the same vein, "[m]any of the states, whose own constitutions entitled their citizens to be armed, did not extend this right to persons convicted of

---

[6]https://heinonline.org/HOL/Page?collection=beal&handle=hein.beal/blorhs0002&id=51&men_tab=srchresults (accessed July 25, 2022).

9

crime."[7] *Skoien*, 614 F.3d at 640. Put simply, as the Seventh Circuit has suggested, "felons were not historically understood to have Second Amendment rights." *Kanter v. Barr*, 919 F.3d 437, 445 (7th Cir. 2019), *abrogated on other grounds by Bruen*, 142 S.Ct. 2111.

In this respect, the right to bear arms is analogous to civic rights that have historically been subject to forfeiture by individuals convicted of crimes, including the right to vote, s*ee Richardson v. Ramirez*, 418 U.S. 24, 56 (1974), and the right to serve on a jury, 28 U.S.C. § 1865(b)(5). *See Binderup v. Att'y Gen. U.S.*, 836 F.3d 336, 349 (3d Cir. 2016) (en banc) ("[P]ersons who have committed serious crimes forfeit the right to possess firearms in much the way 'they forfeit other civil liberties[.]'") (citation omitted). Just as Congress and the States have required persons convicted of felonies to forfeit civic rights, § 922(g)(1) permissibly imposes a firearms disability "as a legitimate consequence of a felony conviction." *Tyler v. Hillsdale Cty. Sheriff's Dep't*, 837 F.3d 678, 708 (6th Cir. 2016) (en banc) (Sutton, J., concurring). Statutes disarming persons considered a risk to society, such as convicted felons, are well known to the American legal tradition. Section 922(g)(1) is consistent with that longstanding tradition. Breeland's claim that § 922(g)(1) unconstitutionally infringes on a Second Amendment right should be denied.

---

[7] Additionally, "several jurisdictions passed laws that confiscated weapons owned by persons who refused to swear an oath of allegiance to the state or to the nation." *Nat'l Rifle*, 700 F.3d at 200; *see also Medina v. Whitaker*, 913 F.3d 152, 159 (D.C. Cir. 2019) (explaining that "during the revolution, the states of Massachusetts and Pennsylvania confiscated weapons belonging to those who would not swear loyalty to the United States").

## III. CONCLUSION

*Heller* and *Bruen* are clear that the Second Amendment protects possession and use of firearms for lawful purposes by law-abiding, responsible citizens. The Constitution does not protect the conduct that § 922(g)(1) prohibits: possessing a firearm as a convicted felon. Moreover, even if such conduct were covered, the statute is consistent with the nation's historical tradition of firearm regulation. The statute is facially constitutional, and Breeland's motion to dismiss should be denied.

Respectfully submitted,

ADAIR F. BOROUGHS
UNITED STATES ATTORNEY

By: _____
Lamar J. Fyall (Fed. ID #13629)
Special Assistant United States Attorney
1441 Main Street, Suite 500
Columbia, SC 29201
Telephone (803) 929-3000
Facsimile (803) 256-0233
August 31, 2022
Lamar.Fyall@usdoj.gov

August 31, 2022

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. 3:22-220-JFA |
| | ) | |
| v. | ) | |
| | ) | |
| BERNARD KENTRELL BREELAND, JR. | ) | |

**CERTIFICATE OF SERVICE**

    I hereby certify that I am an employee in the Office of the United States Attorney for the District of South Carolina, Columbia, South Carolina, and as attorney of record, on July 21, 2022, I caused my legal assistant to serve a true and correct copy of **GOVERNMENT'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS THE INDICTMENT** in the above-captioned case, via the court's e-noticing system, but if that means failed, then by regular United States Mail, postage paid, on the following person(s):

**Elizabeth Anne Franklin-Best**
Elizabeth Franklin-Best PC
2725 Devine Street
Columbia, SC 29205

By: s/*Lamar J. Fyall*
Lamar J. Fyall (Fed. ID #13629)
Special Assistant United States Attorney
1441 Main Street, Suite 500
Columbia, SC 29201
Telephone (803) 929-3000
Facsimile (803) 256-0233
August 31, 2022
Lamar.Fyall@usdoj.gov