IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. 3:22-cr-00220 |
| | ) | |
| vs. | ) | |
| | ) | |
| BERNARD KENTRELL BREELAND, JR. | ) | |
| a/k/a "Neezy Main" | ) | |
| _____ | ) | |

**DEFENDANT BERNARD KENTRELL BREELAND, JR.'S
MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE,
FOR A NEW TRIAL**

# Table of Contents

Procedural History ................................................................................................................. 1

    I.    Indictment and Guilty Plea ......................................................................... 1

    II.    Motion to Withdraw Guilty Plea................................................................ 2

    III.    Pretrial Discovery Issues............................................................................ 2

    IV.    Pretrial Motions ......................................................................................... 4

    V.    Pertinent Issues Raised Prior to Opening Statements .................................. 5

    VI.    Trial............................................................................................................ 7

Legal Standard ...................................................................................................................... 9

    I.    Motion for Judgment of Acquittal ............................................................. 9

    II.    Motion for New Trial ................................................................................. 9

Discussion ............................................................................................................................ 10

    I.    Motion for Judgment of Acquittal ............................................................. 10

    II.    Motion for New Trial ................................................................................. 12

        A.    NIBIN Report........................................................................... 13

            1.    Judicial Admission and Estoppel ............................................. 14

            2.    Federal Rule of Evidence 901.................................................. 16

            3.    Self-Authentication Under Federal Rule of Evidence 902(5)................... 17

            4.    Impact of the Exclusion of the NIBIN Report .......................... 17

        B.    LCSD Documents ..................................................................... 18

Conclusion ........................................................................................................................... 21

# Table of Authorities

**Page(s)**

## Cases

*Brady v. Maryland,*
    373 U.S. 93 (1963) .................................................................................... 4, 6, 12, 15

*Davis v. Alaska,*
    415 U.S. 308 (1974) ..................................................................................... 13

*Giglio v. United States,*
    405 U.S. 150 (1972) ....................................................................................... 4

*Harper v. United States Dep't of the Interior,*
    571 F. Supp. 3d 1147 (D. Idaho 2021) ............................................................. 20

*In re Intern. Mgmt. Assocs.,*
    781 F.3d 1262 (11th Cir. 2015) ....................................................................... 14

*Jones v. City of Middletown, Ohio,*
    No. 1:06-CV-007, 2007 WL 9729105 (S.D. Ohio 2007) ........................................ 15, 20

*Kyles v. Whitley,*
    514 U.S. 419 (1995) ................................................................................... 17, 21

*Lowenfield v. Phelps,*
    817 F.2d 285 (5th Cir. 1987) .......................................................................... 21

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,*
    454 F. Supp. 2d 966 (C.D. Cal. 2006) ............................................................. 15

*New York State Rifle & Pistol Association, Inc. v. Bruen,*
    142 S. Ct. 2111 (2022) .................................................................................... 2

*Patterson v. Miller,*
    451 F. Supp. 3d 1125 (D. Az. 2020) ................................................................ 16

*Smalis v. Pennsylvania,*
    476 U.S. 140 (1986) ....................................................................................... 9

*Tommaseo v. United States,*
    75 Fed. Cl. 799 (2007) ................................................................................... 20

*U.S. E.E.O.C. v. Olsten Staffing Servs. Corp.*,
    657 F. Supp. 2d 1029 (W.D. Wis. 2009) ...................................... 17

*United States v. Alvarez*,
    351 F.3d 126 (4th Cir. 2003) ...................................................... 9

*United States v. Arrington*,
    757 F.2d 1484 (4th Cir. 1985) ............................................. 10, 12

*United States v. Brown*,
    688 F.2d 1112 (7th Cir. 1982) ................................................... 15

*United States v. Liberto*,
    565 F. Supp. 3d 739 (D. Md. 2021) ......................................... 14

*United States v. Mosby*,
    60 F.3d 454 (6th Cir. 1995) ...................................................... 11

*United States v. Sager*,
    227 F.3d 1138 (9th Cir. 2000) ................................................... 17

*United States v. Smith*,
    507 F.2d 710 (4th Cir. 1974) .................................................... 10

*United States v. Vidacak*,
    553 F.3d 344 (4th Cir. 2009) .................................................... 14

*United States v. Wall*,
    389 F.3d 457 (5th Cir. 2004) ...................................................... 9

## Statutes

18 U.S.C. § 921(a)(17)(A) ................................................. 4, 5, 10, 11

18 U.S.C. § 922(g)(1) ................................................................. 1, 5

S.C. Code Ann. § 30-4-50 .............................................................. 20

## Rules

Federal Rule of Criminal Procedure 16(b) ...................................... 6

Federal Rule of Criminal Procedure 29 ................................ 6, 10, 21

Federal Rule of Criminal Procedure 29(c) ...................................... 1

Federal Rule of Criminal Procedure 29(c)(1) ................................................. 9

Federal Rule of Criminal Procedure 33 ........................... 1, 9, 10, 12, 21

Federal Rule of Criminal Procedure 33(a) ..................................................... 9

Federal Rule of Criminal Procedure 52 ..................................................... 18

Federal Rule of Evidence 104 ........................................................... 14, 18

Federal Rule of Evidence 104(a) ........................................................ 7, 19

Federal Rule of Evidence 401 .............................................................. 15

Federal Rule of Evidence 403 .............................................................. 15

Federal Rule of Evidence 702 .............................................................. 15

Federal Rule of Evidence 803(8)(A)(iii) .......................................... 7, 20, 21

Federal Rule of Evidence 901 ..................................................... 14, 16, 18

Federal Rule of Evidence 901(a) ..................................................... 14, 17

Federal Rule of Evidence 901(b) ..................................................... 16, 17

Federal Rule of Evidence 901(b)(4) ........................................................ 16

Federal Rule of Evidence 901(b)(7) ........................................................ 18

Federal Rule of Evidence 902 .............................................................. 14

Federal Rule of Evidence 902(1) ..................................................... 7, 8, 18

Federal Rule of Evidence 902(5) ........................... 7, 8, 17, 18, 19, 20, 21

**Treatises**

3 Fed. Prac. & Proc. Crim. § 581 (5th ed.) ................................................. 9

31 Fed. Prac. & Proc. Evid. § 7105 (2d ed.) ............................................... 15

31 Fed. Prac. & Proc. Evid. § 7109 (2d ed.) ............................................... 16

31 Fed. Prac. & Proc. Evid. § 7139 (2d ed.) ............................................... 19

Defendant, **BERNARD KENTRELL BREELAND, JR.**, through his undersigned attorney, does hereby move the Court for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c). Alternatively, Defendant moves for a new trial pursuant to Federal Rule of Criminal Procedure 33.

This case arises from the shooting of Iman Wilson at an apartment complex in Columbia on the evening of February 4, 2020. The Columbia Police Department ("CPD") investigated and determined that Wilson pointed a firearm at a female bystander and threatened her. Several minutes later, two bystanders confronted Wilson, who was shot during the scuffle. CPD officers located nine spent .45 caliber shell casings and one live .380 bullet in the parking lot of the apartment complex. However, no firearms were recovered.

## I. Indictment and Guilty Plea

On March 15, 2022, a federal Grand Jury returned an Indictment alleging Defendant "knowingly possessed a firearm and ammunition in and affecting commerce, to wit, .45 caliber ammunition, having been previously convicted of a crime punishable by imprisonment for a term exceeding one year and knowing that he had been convicted of such a crime" in violation of 18 U.S.C. § 922(g)(1). ECF No. 3. On March 16, 2022, Defendant was arrested by the United States Marshals Service. ECF No. 9. Two days later, Defendant was arraigned and pled "not guilty." ECF No. 11, 13. During the arraignment, Judge Hodges appointed CJA counsel and the Government moved for detention. ECF No. 11. On March 21, 2022, Judge Hodges issued a written Order appointing initial CJA counsel. ECF No. 16.

After several continuances, initial CJA counsel filed a Motion to Dismiss the Indictment based on the Supreme Court of the United States' opinion in *New York State Rifle & Pistol Asso-*

*ciation, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). ECF No. 38. On September 6, 2022, the Court denied the Motion to Dismiss. ECF No. 43. Thereafter, during the same hearing, Defendant pled guilty to the Indictment without the benefit of a plea agreement. ECF Nos. 43, 44.

## II.     Motion to Withdraw Guilty Plea

Less than one month later, on September 25, 2022, Defendant filed a *pro se* Motion to Withdraw his Guilty Plea. ECF No. 47. Defendant contended that he was coerced into pleading guilty based on erroneous information and inadequate advice from initial CJA counsel. *See id.* On October 4, 2022, initial CJA counsel filed a Request for Status of Counsel Hearing. ECF No. 48. The Court scheduled a hearing for November 1, 2022. ECF No. 49. During the hearing, the Court relieved initial CJA counsel. ECF No. 52. The undersigned was appointed the following day. ECF No. 54.

On February 1, 2023, the undersigned filed a Motion to Withdraw the Guilty Plea. ECF No. 67. The Court held a hearing on February 13, 2023, and granted the Motion. ECF No. 68. The following day, the Court entered a written Order. ECF No. 73.

## III.    Pretrial Discovery Issues

In the month-and-a-half leading up to trial, two important evidentiary issues arose.

First, on March 22, 2023, the Government produced two video recordings of CPD Investigator Nicholas Fortner interrogating Defendant.[1] The interrogation occurred on February 5, 2020. While the Government's initial discovery production contained several reports detailing inculpatory statements that Defendant made during this interrogation, the videos were inexplicably not produced until less than a month-and-a-half before trial—i.e., after Defendant pled guilty

---

[1] Both recordings depict the same interrogation from different cameras.

and withdrew his guilty plea.[2] As detailed below, these videos were ultimately suppressed because Investigator Fortner did not cease questioning Defendant after he unequivocally invoked his right to remain silent.

Second, on March 31, 2023, the Government produced a "NIBIN/IBIS[3] Lead Notification" ("the NIBIN Report").[4] The catalyst for this late production was Defendant's *pro se* request for "ballistics reports" during a March 29, 2023 hearing. *See* ECF No. 84. Specifically, after holding an *ex parte* status of counsel hearing, the Court asked counsel for the Government whether there were any "ballistics reports" that had not yet been produced. In response, counsel for the Government stated that he had the NIBIN Report—a document entirely unknown to the defense prior to that hearing. Two days later, counsel for the Government produced the NIBIN Report to the undersigned. In sum and substance, the NIBIN Report indicates that—on December 3, 2020—the Lexington County Sheriff's Department ("LCSD") recovered a .45 caliber Sig Sauer P320 ("the Handgun") that likely matched the shell casings recovered by the CPD in connection with this prosecution. Both LCSD and CPD were notified by the South Carolina Law Enforcement Division ("SLED") on June 16, 2021, that the spent shell casings from this case likely matched the Handgun. (*See* Ex. 1).

---

[2] Initial CJA counsel filed a Motion for Discovery almost a year prior to the production of the videos. *See* ECF No. 22. The undersigned filed a second Motion for Discovery more than four months prior to the production of the videos. *See* ECF No. 56.

[3] NIBIN is the National Integrated Ballistic Information Network and is administered by the ATF. IBIS is the Integrated Ballistics Identification System and is the technology platform for NIBIN. These databases contain detailed images of spent shell casings or test fired casings and alert law enforcement when a gun is believed to have been used in more than one crime.

[4] The undersigned has filed a Motion to File Exhibits Under Seal and has submitted the proposed sealed exhibits to the Court. The NIBIN Report is included as Exhibit 1.

## IV. Pretrial Motions

Both Defendant and the Government filed pretrial motions. On April 26, 2023, the Court heard argument on the pretrial motions and ruled as follows:

- **Defendant's Motion for Discovery (ECF No. 56):** Found as moot because of the Government's discovery productions.

- **Defendant's Motion for Disclosure of 404(b) Evidence (ECF No. 85):** Granted.

- **Defendant's Motion for Disclosure of *Brady* and *Giglio* Evidence (ECF No. 86):** Granted.

- **Defendant's Motion to Suppress Shell Casings (ECF No. 87):** Denied, as Defendant lacked a reasonable expectation of privacy in the shell casings.

- **Defendant's Motion to Suppress Statements Made During a Custodial Interrogation (ECF No. 88):** After an evidentiary hearing and oral argument, the Court took this Motion under advisement. The Court then issued a Text Order granting the Motion the following day, April 27, 2023. ECF No. 119. A written Order was filed on May 2, 2023. ECF No. 122.

- **Defendant's Motion to Inspect Grand Jury Transcript (ECF No. 92):** Denied.

- **Defendant's Motion to Produce Prior Presentence Reports (ECF No. 93):** Found as moot because of the Government's production of Defendant's prior PSR.

- **Government's Motion in Limine (ECF No. 96):** Held in abeyance. The Government raised two issues in this Motion.

  - First, the Government contended that the undersigned would likely argue that the Indictment required that Defendant knowingly possess a firearm *and* ammunition. The undersigned never had any intention of making that argument because it would be a plainly inaccurate statement of the law. Therefore, the undersigned consented to this request. With the consent of the parties, the Court directed the Government to prepare a "dummy indictment" that omitted the words "a firearm and" from the Indictment.

  - Second, the Government contended that the undersigned should not be able to argue, or elicit testimony, that spent shell casings are not "ammunition" under federal law. The Court held its ruling on this issue in abeyance, informed the parties that it would instruct the jury with the statutory definition of ammunition (18 U.S.C. § 921(a)(17)(A)), and stated that it would handle any objections to testimony and/or argument at trial.

4

- **Consent Motion to Submit Defendant's Proposed Jury Instructions In Camera (ECF No. 100):** Granted.[5]

- **Defendant's Motion to Exclude Medical Records and Photographs of Iman Wilson's Injuries (ECF No. 101):** Denied.

    – The Court permitted the Government to introduce one photograph of a gunshot wound. Moreover, the Court held that the Government could introduce evidence that Wilson was shot and recovered. However, the Court—with the consent of the parties—directed the parties *not* to inform the jury that Wilson had died in an unrelated shooting.[6]

## V. Pertinent Issues Raised Prior to Opening Statements

Trial began on May 3, 2023. After jury selection, the Court addressed several evidentiary issues that were raised in Defendant's Pretrial Brief.[7] Two issues are relevant here:

First, the Court raised the issue of whether spent shell casings are "ammunition" under federal law. *See* 18 U.S.C. § 921(a)(17)(A) ("The term 'ammunition' means ammunition or cartridge cases, primers, bullets, or propellent powder designed for use in any firearm."). The Government reaffirmed its position that 18 U.S.C. §§ 921(a)(17)(A) and 922(g)(1) permit the prosecution of a prohibited person who is caught with a spent shell casing. The undersigned argued that 18 U.S.C. § 921(a)(17)(A) only includes ammunition and/or components that are "designed for use in any firearm." Under that plain text reading, spent shell casings *are not* "ammunition" because they have already *been used* in a firearm. However, the undersigned acknowledged that

---

[5] Defendant submitted his proposed jury instructions to the Court for *in camera* review by email on April 26, 2023.

[6] During the trial, the Government argued that the undersigned "opened the door" to testimony about Mr. Wilson's death during Defendant's opening argument by informing the jury that the Government would not present any eyewitness testimony. The Court held that the undersigned had not "opened the door"; however, the Government was permitted to elicit testimony that Mr. Wilson died from unrelated causes.

[7] The Court addressed several other evidentiary issues that may be at issue in the event an appeal is filed.

the resolution of this issue was best suited for a Rule 29 motion. Therefore, the Court agreed to charge the jury with the statutory definition of "ammunition," with legal arguments to be reserved for mid-trial or post-trial motions under Rule 29.

Second, the Court addressed the issue of "third-party guilt." By way of background, the NIBIN Report indicates that the Handgun likely used in this case was recovered by LCSD during a drug arrest on December 3, 2020—less than ten months after the shooting of Mr. Wilson. As noted above, the Government produced this document, which is plainly *Brady* material, approximately one month prior to trial. However, the Government did not produce *any* additional documents or evidence related to LCSD's seizure of the Handgun. Accordingly, the undersigned obtained an Order authorizing a pretrial subpoena of LCSD's records related to the seizure of the Handgun. On April 19, 2023, LCSD's General Counsel produced documents responsive to the subpoena, including incident reports, booking photographs, and the NIBIN Report. (*See* Ex. 2).[8] One of the two individuals arrested by LCSD looks like the individual in the security footage presented by the Government at trial. The undersigned provided the Government with copies of five documents (collectively, "the LCSD Documents"),[9] pursuant to Federal Rule of Criminal Procedure 16(b), on April 24, 2023, and April 28, 2023:

- SLED IBIS Entry Form for the Handgun;

- NIBIN Report;

- LCSD Case Supplemental Report detailing the seizure of the Handgun during a search warrant; and

- Two Booking Reports for individuals arrested during the search warrant.

---

[8] The undersigned has submitted a color copy of the Offer of Proof with the LCSD documents *in camera* as Exhibit 2 to this Motion.

[9] *See* Ex. 2.

The Court took up one initial evidentiary issue as to the LCSD Documents: Hearsay. After hearing arguments from the parties, the Court ruled that the LCSD Documents were admissible hearsay pursuant to Federal Rule of Evidence 803(8)(A)(iii). However, as detailed below in connection with Defendant's Motion for a New Trial, Defendant was denied the opportunity to confront the Government's witnesses with either the NIBIN Report or the LCSD Documents.

## VI.    Trial

The parties made opening statements on the afternoon of May 3, 2023. Thereafter, the Government called several witnesses, including the responding CPD Officer, a Crime Scene Investigator ("CSI"), and an ATF Interstate Nexus expert. The undersigned sought to admit the NIBIN Report through the CSI (Kevin Schmidt); however, the Government objected on authenticity grounds. The Court sustained the objection. The undersigned also sought to ask the ATF Interstate Nexus expert a series of very basic questions about NIBIN.[10] The Government again objected, and the Court allowed this limited questioning.

On the morning of the second day of trial, amidst the Government's case-in-chief, the undersigned provided the Government and the Court with a written Offer of Proof that contained the LCSD Documents. (*See* Ex. 2). The undersigned requested a hearing pursuant to Federal Rule of Evidence 104(a) and sought a ruling that the LCSD Documents were self-authenticating under Federal Rules of Evidence 902(1) and 902(5). The purpose of this hearing was to establish the authenticity, and admissibility, of the NIBIN Report and the LCSD Documents so that the undersigned could confront, and cross-examine, the Government's lead investigator—CPD Investigator Nicholas Fortner. The Court held a hearing outside of the presence of the jury and

---

[10] For example, the undersigned asked the ATF Agent: "Do you agree that NIBIN is a useful forensic and investigative tool?" The Government's objection as to this question was overruled.

concluded that the NIBIN Report and the LCSD Documents were not self-authenticating under Rules 902(1) and 902(5). Because of the Government's staunch opposition[11] to the authenticity of the NIBIN Report and the LCSD Documents, Defendant was not able to use the documents in the Government's case-in-chief. Thus, the undersigned was precluded from confronting, and cross-examining, Investigator Fortner and other Government witnesses about these exculpatory documents.

At the conclusion of the Government's case-in-chief, the undersigned moved for a judgment of acquittal based on the insufficiency of the evidence and the argument that spent shell casings are not "ammunition" under federal law. The motion was denied. The Court then heard arguments from the parties about whether the NIBIN Report and the LCSD Documents were admissible in Defendant's case-in-chief. The undersigned had subpoenaed a LCSD investigator in the event the LCSD Documents were going to be used in his case-in-chief. However, the undersigned—in consultation with Defendant—decided not to call that witness in Defendant's case-in-chief.[12] Thus, Defendant rested, the Court instructed the jury,[13] and the parties presented closing statements.

---

[11] The Court properly noted on several occasions that Defendant stipulated to the authenticity of all of the Government's evidence. The converse, however, was not true. The Government disputed the authenticity of all evidence proffered by Defendant—including the NIBIN Report, which had been produced *by the Government* in discovery.

[12] The Court also very graciously arranged for the LCSD General Counsel to be available to testify as a records custodian if Defendant put up evidence in his case-in-chief. However, the undersigned—in consultation with Defendant—determined not to present evidence in Defendant's case-in-chief. The strategic reasons for this decision are both outside of the record and immaterial to this Motion.

[13] The Court held a charge conference and modified the jury instructions after hearing arguments from the parties. Any contention of error in the Court's instructions will be addressed on appeal (if necessary).

During deliberations, the jury sent a note asking to see a demonstrative picture that the Government used in its closing statement. The demonstrative picture depicted side-by-side images of a screenshot of the individual who shot Mr. Wilson from the security video and Defendant in a custodial interrogation room.[14] The Court properly held that the demonstrative picture was not an exhibit; however, it let the jurors watch the security video while reviewing the picture of Defendant in the interrogation room. A short time later, the jury returned a guilty verdict.

<u>**LEGAL STANDARD**</u>

**I.    Motion for Judgment of Acquittal**

"A defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." Fed. R. Crim. P. 29(c)(1). "A judgment of acquittal based on the insufficiency of evidence is a ruling by the court that as a matter of law the government's evidence is insufficient 'to establish factual guilt' on the charges in the indictment." *United States v. Alvarez*, 351 F.3d 126, 129 (4th Cir. 2003) (quoting *Smalis v. Pennsylvania*, 476 U.S. 140, 144 (1986)).

**II.    Motion for New Trial**

Under Federal Rule of Criminal Procedure 33, the Court may "grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "Rule 33 recognizes that if a trial court concludes for any reason that the trial has resulted in a miscarriage of justice, the court has broad powers to grant a new trial." 3 Fed. Prac. & Proc. Crim. § 581 (5th ed.). Courts have held that "any error of sufficient magnitude to require reversal on appeal is an adequate ground for granting a new trial." *United States v. Wall*, 389 F.3d 457, 474 (5th Cir. 2004) (internal quotation omitted). For example, courts have granted new trials based on the improper exclusion of evi-

---

[14] The undersigned previously objected to the introduction of the picture of Defendant in an interrogation room and restated the objection in response to the jury's note.

dence. *See, e.g., United States v. Smith*, 507 F.2d 710, 712 (4th Cir. 1974) (reversing the denial of a motion for new trial when—in the context of an insanity defense—the district court improperly "confined the defendant's presentation to an abbreviated account" and "circumscribed too narrowly the defendant's evidence of other periods of abnormal behavior on his part").

"In deciding a motion for a new trial, the district court is not constrained by the requirement that it view the evidence in the light most favorable to the government." *United States v. Arrington*, 757 F.2d 1484, 1485 (4th Cir. 1985). "Thus, it may evaluate the credibility of the witnesses." *Id.* "When the evidence weighs so heavily against the verdict that it would be unjust to enter judgment, the court should grant a new trial." *Id.*

## DISCUSSION[15]

### I. Motion for Judgment of Acquittal

The Indictment charges that Defendant "knowingly possessed a firearm and ammunition in and affecting commerce, to wit, .45 caliber ammunition . . . . ECF No. 3. The Government introduced evidence at trial that an individual shot Mr. Wilson with a handgun. However, no gun was recovered. Instead, CPD only recovered spent .45 caliber shell casings and a live .380 round.

As an initial matter, spent shell casings do not qualify as "ammunition" under federal law. Federal law defines "ammunition" to mean "ammunition or cartridge cases, primers, bullets, or propellent powder *designed for use in any firearm*." 18 U.S.C. § 921(a)(17)(A) (emphasis added). But a spent shell casing is not a "cartridge case[]" designed for use in a firearm. *See id.* Rather, spent shell casings are freely sold and used in jewelry, bottle openers, and home décor. The

---

[15] The undersigned recognizes the Court's analysis under Federal Rules of Criminal Procedure 29 and 33 is procedurally distinct than that of an appellate court. Accordingly, the issues raised below are limited in nature, and Defendant will raise any remaining issues in the event there is an appeal.

reference to "cartridge cases" in 18 U.S.C. § 921(a)(17)(A) is intended to encapsulate component parts that can be assembled into a live round of ammunition. *See, e.g.*, *United States v. Mosby*, 60 F.3d 454, 457 (6th Cir. 1995). Put simply, a spent shell casing is no longer "designed for use in any firearm" because it has *already been used* in a firearm. 18 U.S.C. § 921(a)(17)(A). Moreover, even if spent shell casings were "ammunition" under federal law, the Government did not introduce any evidence that Defendant "possessed" those spent shell casings.

Defendant expects the Government will argue that the spent shell casings are circumstantial evidence that he possessed live ammunition. But the Government's argument fails because of its flawed and incomplete investigation. CPD failed to test the spent shell casings for fingerprints, DNA, touch DNA, or any other forensic evidence. CPD did not test Defendant's hands or clothing for gunshot residue. CPD did not request or obtain a search warrant for Defendant's car or home to look for a firearm, ammunition, the distinctive clothing worn by the shooter, or any physical or forensic evidence tying Defendant to the spent shell casings.

All of this is buttressed by the important point that CPD determined that there were *two* guns during the shooting and *two* types of ammunition found at the crime scene—the .45 caliber casings at issue in the Indictment and a *live* .380 round. The Government introduced no evidence that Defendant possessed live .45 caliber ammunition, and the .45 caliber spent shell casings are the only means by which the Government can attempt to meet the "interstate commerce" nexus.

The Government's failure of proof is made worse by its failure to conduct any follow-up investigation when a firearm matching the spent shell casings was recovered. CPD—and presumably the ATF—was alerted on June 16, 2021, that LCSD recovered a .45 caliber handgun presumptively matching the spent shell casings. No CPD investigators or ATF agents contacted LCSD to speak to investigators, test the gun, or interview the individuals from which the gun

was seized. Moreover, the Government vigorously objected to the introduction of the NIBIN Report and the LCSD Documents. At the end of the day, the Government's case consists of a low-quality video of an individual firing a handgun, spent shell casings in the area (along with ammunition of a caliber *not* charged in the Indictment), and Defendant's GPS location at a large gathering at the apartment complex where the shooting occurred. That is insufficient to establish Defendant's factual guilt of the federal offense charged in the Indictment, and Defendant respectfully requests that the Court enter a judgment of acquittal.

## II.   Motion for New Trial

Alternatively, Defendant moves for a new trial on two distinct but related grounds.[16] First, the Government improperly impeded the introduction of *Brady* evidence—i.e., the NIBIN Report—that it produced during discovery by objecting to its authenticity. Second, the Court respectfully erred by holding that the LCSD Documents had not been authenticated. Respectfully, either ground warrants a new trial under Federal Rule of Criminal Procedure 33.

Prior to addressing these issues, it is important to understand how the Government investigated and prosecuted this case. On February 4, 2020, CPD began investigating the shooting of Mr. Wilson. CPD then arrested Defendant the following day for state offenses. Within two weeks, the ATF opened a federal investigation. (*See* Ex. 3).[17] Despite the Government's early

---

[16] Additionally, for the reasons stated above, Defendant contends that a new trial is necessary because "the evidence weighs so heavily against the verdict that it would be unjust to enter judgment." *Arrington*, 757 F.2d at 1485.

[17] Exhibit 3 highlights the importance of NIBIN in the Government's firearm-related investigations—including this investigation. *See also* U.S. ATTORNEY'S OFFICE, DISTRICT OF SOUTH CAROLINA, *DOJ Charges More Than 14,200 Defendants with Firearms-Related Crimes in Fiscal Year 2020*, https://www.justice.gov/usao-sc/pr/doj-charges-more-14200-defendants-firearms-related-crimes-fiscal-year-2020 (Oct. 14, 2020) (emphasizing the importance of NIBIN in the District's firearms-related prosecutions). However, at trial, the Government repeatedly disputed the authenticity of the NIBIN Report and the reliability of NIBIN.

involvement, Defendant was not indicted by a federal Grand Jury until March 15, 2022. ECF No. 3. As is often the case in federal gun and ammunition prosecutions, the Government's testimonial case-in-chief relied entirely on the investigative efforts of local law enforcement. Unlike many federal prosecutions, the Government did not offer the testimony of a federal "Case Agent."[18] ATF personnel only testified as to the "Interstate Nexus" requirement and Defendant's GPS locations.

Therefore, to effectively represent criminal defendants in firearms-related cases, defense counsel must be able to confront, and cross examine, local law enforcement about the sufficiency of the local investigation that resulted in a federal Indictment. Here, in large part because of the Government's unjustified objections, Defendant was stymied from confronting, and cross-examining, the Government's witnesses about important evidence—including evidence produced *by the Government* in discovery. The Sixth Amendment requires more, and "[c]ross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 315–16 (1974) (holding that the Sixth Amendment guarantees "more than being allowed to confront the witness physically" and emphasizing the constitutional importance of meaningful cross-examination).

### A. NIBIN Report

As noted above, the NIBIN Report states that LCSD recovered the Handgun on December 3, 2020. (*See* Ex. 1). On June 16, 2021, both LCSD and CPD were notified that "the potential that the same firearm was involved in [their] investigation[s] is significant enough that investiga-

---

Because Exhibit 3 was produced by the Government in discovery and is designated "Restricted Access," the undersigned has not disclosed the contents of the document in this Motion. However, the document has been produced to the Court for *in camera* review.

[18] In fact, the ATF Case Agent did not attend Defendant's trial.

tive follow up is warranted at this time should an investigator choose to pursue it." (*Id.*). On the first day of trial, Defendant sought to introduce the NIBIN Report through a Government witness. On the second day of trial, Defendant sought to introduce the NIBIN Report through a formal Offer of Proof prior to the testimony of the Government's lead investigator. (*See* Ex. 2). The Government objected both times, claiming that the NIBIN Report was not authentic under Federal Rule of Evidence 901 or 902. Respectfully, the Government's objections—and the resulting exclusion of the NIBIN Report—are contrary to the governing law and deprived Defendant of the opportunity to meaningfully confront, and cross-examine, the Government's witnesses.

"The burden of establishing the authenticity of a particular document 'is a light one.'" *United States v. Liberto*, 565 F. Supp. 3d 739, 743 (D. Md. 2021) (quoting *In re Intern. Mgmt. Assocs.*, 781 F.3d 1262, 1267 (11th Cir. 2015)). To establish authenticity, a proponent need only "produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Moreover, some types of evidence are self-authenticating and "require no extrinsic evidence of authenticity in order to be admitted." Fed. R. Evid. 902. Authenticity is an issue first decided by the Court. *See* Fed. R. Evid. 104. However, "[t]he factual determination of whether evidence is that which the proponent claims is ultimately reserved for the jury." *United States v. Vidacak*, 553 F.3d 344, 349 (4th Cir. 2009).

Here, the NIBIN Report was authentic for at least three independent reasons.

### 1. Judicial Admission and Estoppel

First, the Government produced the NIBIN Report during discovery. Yet, when Defendant sought to use the document during the Government's case-in-chief, the Government repeatedly objected and claimed that the NIBIN Report was not authentic. However, federal caselaw holds that documents produced by a party in response to a discovery request are authentic when

14

offered by the party-opponent. *See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 972 (C.D. Cal. 2006) (collecting cases); *see also* 31 Fed. Prac. & Proc. Evid. § 7105 (2d ed.) ("Authentication also can be accomplished through judicial admissions such as . . . production of items in response to subpoena or other discovery request."). Here, both initial CJA counsel and the undersigned filed Motions for Discovery that specifically included requests for *Brady* material.[19] *See* ECF Nos. 22, 56. The Government produced the NIBIN Report in response to these Motions.

By producing the NIBIN Report in response to Defendant's Motions for Discovery, the Government is estopped from later disclaiming its authenticity. *See United States v. Brown*, 688 F.2d 1112, 1115–16 (7th Cir. 1982) (finding, as "totally without merit," a defendant's argument that documents he produced in lieu of a grand jury subpoena were not authentic and noting that even the defendant "admits that if he had produced the documents personally in response to the subpoena, the very act of producing them and representing them to be the documents described in the subpoena would have authenticated them"). That is particularly true here because the Government produced the NIBIN Report—as it was required to under *Brady*—during discovery and represented it to be a law enforcement document. *See Jones v. City of Middletown, Ohio*, No. 1:06-CV-007, 2007 WL 9729105, at *7 (S.D. Ohio 2007) ("By producing a police report in discovery, the producing party vouches that the documents are what they are purported to be and a court cannot argue that the documents are not authentic."). Of course, the Government is free to object to the *admissibility* of documents it produces in discovery—for example, under Federal Rules of Evidence 401, 403, or 702—but it cannot disclaim the documents' authenticity.

---

[19] The undersigned also filed an additional Motion for Disclosure of *Brady* and *Giglio* Evidence after the Government belatedly produced the NIBIN Report. *See* ECF No. 86.

## 2. Federal Rule of Evidence 901

Second, Defendant satisfied the "light" burden of authenticating the NIBIN Report under Rule 901. Federal Rule of Evidence 901(b) provides a non-exhaustive list of methods of authenticating evidence. Importantly, the testimony of a witness with personal knowledge of the evidence is *not* required to authenticate evidence. For example, evidence can be authenticated based on "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." Fed. R. Evid. 901(b)(4). That rule "is most commonly employed to authenticate writings." 31 Fed. Prac. & Proc. Evid. § 7109 (2d ed.).

Defendant sought to authenticate the NIBIN Report through CPD CSI Kevin Schmidt. Defendant elicited testimony from Schmidt about NIBIN and testimony that internal law enforcement case numbers are unique identifiers for a particular case. Schmidt also testified that the CPD case number for this case is 200003409, which matches the case number on the NIBIN Report. The Government immediately objected to this line of questioning, and, after hearing from the parties, the Court sustained the Government's objection as to authenticity. Respectfully, that was error.

The appearance of the NIBIN Report as a law enforcement document and the "distinctive characteristics" such as case numbers are precisely the type of indicia sufficient to authenticate a document under Rule 901(b)(4). And, here, the appearance and characteristics of the NIBIN Report were coupled with extrinsic evidence that the Government had produced the document in discovery. *See, e.g., Patterson v. Miller*, 451 F. Supp. 3d 1125, 1140–41 (D. Az. 2020) (holding that Child Protective Services intake reports, investigation reports, and case notes "are authenticated by their numerous distinctive characteristics, including the appearance of the records and the non-public information concerning the investigation that took place"); *U.S. E.E.O.C. v. Ol-*

16

*sten Staffing Servs. Corp.*, 657 F. Supp. 2d 1029, 1034 (W.D. Wis. 2009) (holding that "e-mails may be authenticated through the e-mail addresses in the headers and other circumstantial evidence, such as the location where the e-mail was found").

Importantly, Rule 901(a) only requires the proponent to "produce evidence sufficient to support a finding that the item is what the proponent claims it is." Moreover, the evidence used to authenticate the document does not need to fit squarely within one of Rule 901(b)'s non-exhaustive categories. Respectfully, under that light burden, Defendant laid a sufficient foundation to authenticate the NIBIN Report during the questioning of CSI Schmidt.

### 3. Self-Authentication Under Federal Rule of Evidence 902(5)

Finally, an identical copy of the NIBIN Report was produced by LCSD in response to Defendant's subpoena. As detailed below, the LCSD Documents—including the NIBIN Report—are self-authenticating under Federal Rule of Evidence 902(5).

### 4. Impact of the Exclusion of the NIBIN Report

At bottom, the NIBIN Report was authentic, relevant, and admissible. But the Government's repeated objections to the authenticity of the NIBIN Report prevented Defendant from confronting, and cross-examining, the Government's witnesses about important and exculpatory documentary evidence. *See Kyles v. Whitley*, 514 U.S. 419, 442 n.13 (1995) (discussing the utility of using *Brady* evidence to "attack[] the investigation as shoddy"); *see also United States v. Sager*, 227 F.3d 1138, 1145 (9th Cir. 2000) (holding that "[d]etails of the investigatory process potentially affected [the investigator's] credibility and, perhaps more importantly, the weight to be given to evidence produced by his investigation"). Respectfully, the Court's error in sustain-

ing these objections affected Defendant's substantial rights,[20] resulted in a miscarriage of justice, and warrants a new trial.

### B. LCSD Documents

On the morning of the second day of trial, the undersigned drafted an Offer of Proof with copies of the LCSD Documents as exhibits. (*See* Ex. 2). Given the Government's objections to authenticity on the first day of trial, the Offer of Proof was designed to obtain a preliminary ruling about admissibility outside of the presence of the jury. The undersigned provided counsel for the Government and the Court with a copy of the Offer of Proof and requested a hearing pursuant to Federal Rule of Evidence 104. A short time later, the Court held a hearing, and the undersigned argued that the LCSD Documents were self-authenticating pursuant to Federal Rules of Evidence 902(1)[21] and 902(5). The Government again objected, claiming that the LCSD Documents—including the NIBIN Report—were not authentic documents. The Court agreed and found that Defendant had not established the authenticity of the LCSD Documents.

Respectfully, however, the LCSD Documents are self-authenticating under Federal Rule of Evidence 902(5).[22] That rule provides that "no extrinsic evidence of authenticity" is necessary

---

[20] As discussed in more detail above, the Government did not present any eyewitness testimony or physical/forensic evidence linking Defendant to the possession of ammunition. Essentially, the Government's case relied entirely on jurors making a lay identification from video footage. That highlights the importance of being able to effectively cross-examine the Government's witnesses about their investigation and alternative perpetrators. Put plainly, any error is not harmless under Federal Rule of Criminal Procedure 52.

[21] For purposes of this Motion, Defendant has not included argument as to Federal Rule of Evidence 902(1). That issue is not abandoned and may be raised on appeal (in the event an appeal is filed).

[22] The Offer of Proof and hearing focused on self-authentication. However, the Offer of Proof and arguments advanced by Defendant also supported authentication under Rule 901. (*See* Ex. 2 at 3–4); *see, e.g.,* Fed. R. Evid. 901(b)(7) (stating that evidence about public records is authentic

for admission of "**Official Publications.** A book, pamphlet, or other publication purporting to be issued by a public authority." Fed. R. Evid. 902(5). "The scope of Rule 902(5) broadly extends to books, pamphlets, and all other publications purporting to be issued by a public authority." 31 Fed. Prac. & Proc. Evid. § 7139 (2d ed.). "Official Publications" are distinguished from "public records and public documents," in that those items are "prepared not for distribution but, instead, for filing or recording in a public office." *Id.* There are "several reasons for making official publications self-authenticating." *Id*.

> First, the genuineness of an official publication is usually obvious on its face, which commonly bears an official mark or attribution of some type. Second, these items usually are difficult to counterfeit, the incentive to do so is rare, and the disincentives to do so may include civil or criminal liability. Third, requiring the presentation of extrinsic authenticating evidence for official publications would impose a burden on public officials called to testify.

*Id.*

"[A]n entity or official at any level of civic responsibility may issue an official publication." *Id.* However, the item "must bear on its face some indicia of official origin to qualify for self-authentication under this provision." *Id.* "This may include an explicit statement that the item was issued by a public authority, a facsimile of an official seal or signature, the letterhead of a public agency, . . . or some similar indicia." *Id.* "In the usual case, the presence of such indicia is sufficient to qualify the item as an official publication." *Id.* The question of whether a writing "is an official publication is a preliminary fact for the court to determine under Federal Rule of Evidence 104(a)."

Here, the requirements of Rule 902(5) are met. The documents at issue were produced by the General Counsel of the LCSD. (*See* Ex. 2 at Ex. F). The cover letter to the subpoena response

---

if there is extrinsic evidence that "a purported public record or statement is from the office where items of this kind are kept").

bears the insignia of LCSD and has "Office of the Sheriff LEXINGTON COUNTY Bryan 'Jay' Koon" in the letterhead. (*See id.*). This insignia and letterhead, as well as the statement that the records are "provided by Terry Hite, Records Custodian and Investigator Smith, Crime Scene Investigation" are more than sufficient to demonstrate indicia of official origin. Moreover, each of the five documents bears the name or abbreviation of "Lexington County Sheriff's Department," the name SLED, or the insignia of SLED. (*See* Ex. 2).

Additionally, the documents are of the type that are published by public authorities. NIBIN Reports are—by their very nature—intended to be disseminated to law enforcement agencies by SLED and/or the ATF. Similarly, police reports and booking reports are frequently published to other law enforcement agencies or the public at large. *See, e.g.,* S.C. Code Ann. § 30-4-50 (declaring "reports which disclose the nature, substance, and location of any crime or alleged crime reported as having been committed" to "specifically [be] made public information").

Courts have found government reports to be self-authenticating in similar circumstances. *See Harper v. United States Dep't of the Interior*, 571 F. Supp. 3d 1147, 1162 (D. Idaho 2021) (holding that a preliminary report on the investigation of a federal employee's grievance was self-authenticating under Rule 902(5)); *Jones*, 2007 WL 9729105, at *7 (admitting "[i]nternal police reports and internal memoranda" under Rule 902(4) and noting, "Moreover, authentication is not required for official publications 'purporting to be issued by public authority." (citing Fed. R. Evid. 902(5)). Moreover, the Court made a pretrial determination that the LCSD Documents were public records that set out "factual findings from a legally authorized investigation." *See* Fed. R. Evid. 803(8)(A)(iii). That is further indicia that the documents are official publications of SLED and the LCSD. *See Tommaseo v. United States*, 75 Fed. Cl. 799, 806–07 (2007)

(holding that public records that were admissible under the prior version of Rule 803(8)(A)(iii) were also self-authenticating pursuant to Rule 902(5) as "publication[s] purporting to be issued by a public authority").

Accordingly, the Court erred in finding that the LCSD Documents were not authenticated. The impact of the exclusion of these documents was substantial, as Defendant was precluded from confronting, and cross-examining, the Government's witnesses about important and exculpatory documentary evidence. *See Kyles*, 514 U.S. at 442 n.13 (discussing the utility of using *Brady* evidence to "attack[] the investigation as shoddy"); *see also Lowenfield v. Phelps*, 817 F.2d 285, 291–92 (5th Cir. 1987), *aff'd on other grounds*, 484 U.S. 231 (1988) (holding that defense counsel employed a reasonable trial strategy by arguing that law enforcement's "sloppy police work" and failure to discover weapons "set the stage for an argument that others were implicated in the murders"). Respectfully, the Court's error in sustaining these objections affected Defendant's substantial rights, resulted in a miscarriage of justice, and warrants a new trial.

## CONCLUSION

Defendant respectfully requests that the Court enter a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. In the alternative, Defendant requests a new trial pursuant to Federal Rule of Criminal Procedure 33.[23]

**[Signature Page Follows]**

---

[23] At trial, Defendant objected to a number of evidentiary and constitutional issues that are not addressed in this Motion. Defendant has not abandoned those issues and may raise them as independent assignments of error on appeal.

Respectfully Submitted,

/s/ John L. Warren III
John L. Warren III (Federal ID No. 12164)
Email: jw@billnettleslaw.com
Law Office of Bill Nettles
2008 Lincoln St.
Columbia, SC 29201
Tel: (803) 814-2826

**Attorney for Defendant Bernard Kentrell Breeland, Jr.**

May 18, 2023